## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MR. FRANK STOSIC, MRS. JODI STOSIC,   )
and MS. DESTINIE BEDARD,   )
   )
         Plaintiffs,   )
   )
         v.   )
   )
WEST JEFFERSON HILLS SCHOOL   )
DISTRICT,   )
   )
         Defendant.   )

Civil Action No. 21-cv-1072
Magistrate Judge Maureen P. Kelly

Re: ECF No. 10

### AMENDED MEMORANDUM OPINION

Plaintiffs Frank Stosic ("Mr. Stosic"), Jodi Stosic ("Mrs. Stosic") and Destinie Bedard ("Ms. Bedard") (collectively, "Plaintiffs") bring this action against West Jefferson Hills School District (the "District") arising out of allegations that Ms. Bedard suffered race and gender-based harassment while she was a District student. ECF No. 9.

Presently before the Court is a Motion to Dismiss filed by the District. ECF No. 10. For the reasons below, the Motion to Dismiss is granted in part and denied in part.[1]

## I.    FACTUAL BACKGROUND

Mr. and Mrs. Stosic are the parents and legal guardians of Ms. Bedard. ECF No. 9 ¶¶ 6-7. At all times relevant to this action, Ms. Bedard was a student enrolled in the District. Id. ¶ 5.

Beginning in November 2017, Ms. Bedard became the target of derogatory, racist and sexist remarks on social media such as "slut," "whore" and "nigger." Id. ¶ 15. Mrs. Stosic reported these statements, which upon information and belief were made by a Caucasian male student, to

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF No. 16.

the District's former principal, Mr. Christopher Sefcheck ("Sefcheck"), and the School Resource Officer, Mr. James Modrak ("Modrak"). Id. ¶ 16. Both men assured Mrs. Stosic that they would speak to the offending student to address the matter. Id. ¶ 17.

On November 13, 2017, the same day that Mrs. Stosic reported her concerns to the two District officials, Ms. Bedard received a vulgar text message from an unknown number that included the racist statement, "I hate niggers." Id. ¶ 19. Afraid for Ms. Bedard's safety, Mrs. Stosic filed a police report. Id. ¶ 20.

Mrs. Stosic was never provided any information regarding the investigation that Principal Sefcheck and School Resource Officer Modrack indicated would occur. Id. ¶ 21. To Plaintiffs' knowledge, the offending student was never disciplined. Id. ¶ 22.

On December 20, 2018, Officer Marks of the Jefferson Hills Police Department informed Mrs. Stosic that the District failed to transmit any information to the Police Department regarding the harassment report made on November 13, 2017. Id. ¶ 23.

On January 16, 2018, Ms. Bedard was physically assaulted by another Caucasian, male student. Id. ¶ 24. During the assault, the male student physically lifted Ms. Bedard off the ground and slammed her into the floor. This incident occurred in the District's high school building. Id. ¶ 25. Plaintiffs believe that a teacher was present for the incident and never reported it to the District's administration. Id. ¶¶ 26-27.

Upon learning of the assault, Mrs. Stosic left work and drove to the high school to meet with the principal. Id. ¶ 28. Mrs. Stosic and her daughter attended a meeting with Principal Sefcheck and Superintendent Michael Ghilani ("Ghilani"). Id. ¶ 29. During this meeting, Principal Sefcheck and Superintendent Ghilani questioned whether Ms. Bedard was assaulted by her Caucasian peer, or if it was "horseplay." Id. ¶ 31. Ms. Bedard confirmed that she was

assaulted, and that the student's actions were intentional. She also indicated that other witness statements would establish the intentional nature of this assault. Id. ¶ 32. Ultimately, the student who assaulted Ms. Bedard received a one-day suspension. Id. ¶ 33. Ms. Bedard suffered a concussion, requiring medical care. Id. ¶ 34.

On January 23, 2018, Mrs. Stosic gave a PowerPoint presentation to the District to share her concerns about the District's failure to address systematic racial discrimination and to protect its students from harassment. Id. ¶ 35.

Ms. Bedard's concussion symptoms from the assault worsened, causing her to miss midterm examinations, school activities, and other events. Id. ¶ 36.

Other students began bullying and blaming Ms. Bedard for the incident. A Caucasian student sent text messages to her phone that said, "It's your fault, you know nothing is going to happen, fuck you for going to the authorities." Id. ¶ 37. Ms. Bedard and Mrs. Stosic made the District aware of the ongoing bullying and harassment. Id. ¶ 38. The District did not do anything to protect Ms. Bedard, to ensure her safety, or try to stop the ongoing harassment. Id. ¶ 38.

Over the next four months, Mr. and Mrs. Stosic emailed District officials relative to hateful text messages that Ms. Bedard was receiving from peers and teachers asking when she was transferring to another school. Id. ¶ 39. They also communicated their concern for their daughter's safety. Id. ¶ 40. When asked to identify specific students who were harassing and bullying her, they did so. Plaintiffs were only advised that the offending students were given a warning and instructed to stay away from Ms. Bedard. Id. ¶¶ 42-49.

Finally, in May of 2018, Mrs. Stosic filed an Educator Misconduct Complaint with the Pennsylvania Department of Education against Principal Sefcheck. Id. ¶ 50.

On August 2, 2018, Mrs. Stosic attended a band meeting with other parents where the band director alluded to racial incidents from the previous school year that appeared to refer to Ms. Bedard. Id. ¶ 51. In response, the District emailed that: "He [Mr. Mirabella] explained to us that he was trying to be proactive and let parents know that he was not going to tolerate any type of racial intimidation. He referenced a handful of incidents that we met with HS staff about last year. We also hired a consultant to work with our staff around cultural competence and he cited that as well." Id. ¶ 52.

In approximately September of 2018, someone keyed Ms. Bedard's vehicle while it was parked in the District's high school parking lot. Id. ¶ 53. The District told Ms. Bedard they could not and would not investigate the incident, as the District did not have any cameras in the student parking lot. Id. ¶ 54.

In November 2018, Ms. Bedard won the Student of the Month award. She attempted to return paperwork to the Assistant Principal's Secretary, Dorothy Kutscher, to accept that award, but Ms. Kutscher told Ms. Bedard that she was ineligible for the award. Id. ¶ 56. Mr. and Mrs. Stosic asked for clarification. The District apologized but failed to remedy the matter. Id. ¶ 57.

In November or December of 2018, Ms. Bedard tried out for the girls' basketball team. Every student who tried out made the team with the exception of Ms. Bedard. The District did not explain why Ms. Bedard was the only student not permitted to participate. Id. ¶¶ 58-59.

In February 2019, Ms. Bedard continued to be bullied and harassed by Caucasian peers on District property. Caucasian peers would make derogatory and racist comments to Ms. Bedard, and they would touch and pull Ms. Bedard's hair without permission. Id. ¶¶ 60-61.

Ms. Bedard and Mrs. Stosic told District High School Principal Paul Ware about the harassment Ms. Bedard was experiencing. Rather than responding appropriately, he excused one

of the student's behavior and told Mrs. Stosic to call the offending student's parents to request that he apologize, but he offered no additional support or assistance.  Id. ¶¶ 62-63.  Also, in February 2019, Ms. Bedard saw the words, "Fuck Niggers" carved into the lunch table in the District's high school.  Id. ¶ 64.

In April 2019, Ms. Bedard tried out for captain of the Majorette Team.  She was not chosen as captain.  Instead, a Caucasian peer was selected.  Id. ¶ 68.

In May 2019, a female Caucasian peer began yelling at Ms. Bedard in the high school hallway.  When Ms. Bedard spoke to Assistant Principal Adam Knaresborough about this harassment, he told Ms. Bedard that it was in her best interest to befriend the student.  Id. ¶¶ 66-67.

During the 2019-2020 school year, Ms. Bedard was a member of the District's high school majorette team.  Id. ¶ 68.  She was the only student of color on the majorette team.  Id. ¶ 71.  On September 20, 2019, Ms. Bedard experienced a foot injury after an accident at a game.  Id. ¶ 69.  On September 23 and 24, Ms. Bedard was not permitted to participate in majorette practice, despite having a doctor's note that permitted her to do so.  Then, on September 26, 2019, Ms. Bedard was inexplicably not permitted to march with the majorette team.  Id. ¶¶ 69-70.

On September 27, 2019, Plaintiffs asked the District to explain why Ms. Bedard had been prohibited from participating.  They also questioned why a Caucasian student who they believed had been disciplined and suspended weeks earlier was permitted to march with the band when Ms. Bedard was not.  Id. ¶ 72.

On October 3, 2019, the District stated they were investigating Plaintiffs' concerns.  Id. ¶ 73.  On October 18, 2019, the District emailed Mr. and Mrs. Stosic, stating that the family's facts were inaccurate.  Id. ¶ 74.

Plaintiffs' repeated attempts to ask for help from the District's Administration were ignored, and Ms. Bedard feared for her safety in school and in the community.  Id. ¶¶ 75, 81.

As a result of the assaults, discrimination and harassment, Ms. Bedard began suffering from severe depression.  Id. ¶ 82.  These experiences caused her grades to drop dramatically, and she was forced to quit the high school band and sports she once enjoyed playing.  Id. ¶ 83.

On July 10, 2019, Mrs. Stosic filed a racial discrimination and harassment complaint against the District with the Pennsylvania Human Relations Commission.  The Complaint referenced a child, by name, who allegedly harassed Ms. Bedard.  The named child is the son of a District employee.  Id. ¶¶ 85-87.  That District employee then filed a lawsuit against Mrs. Stosic. Id. ¶ 90.  Plaintiffs state that these actions were retaliatory in nature against Mrs. Stosic and Ms. Bedard, as the District employee's complaint referenced Mrs. Stosic's previous PowerPoint presentation to the District's School Board.  Id. ¶ 92.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their original Complaint on August 11, 2021.  ECF No. 1.  The Court subsequently granted leave to file an Amended Complaint.  ECF Nos. 6 and 7.  The operative Amended Complaint was filed on October 25, 2021.  ECF No. 9.  In the Amended Complaint, Plaintiffs allege the following claims against the District: unconstitutional policies and customs pursuant to Section 1983/Monell (Count I); violation of the Pennsylvania Human Relations Act ("PHRA") (Count II); violation of Title IX (Count III); violation of the Fourteenth Amendment state created danger (Count IV); violation of Section 1983 (Count V) and violation of Title VI of the Civil Rights Act of 1964 (Count VI).  Counts I, I, III, IV, and VI are asserted by Ms. Bedard, only.  Count V is brought solely by Mr. and Mrs. Stosic.

The District filed the instant Motion to Dismiss and Brief in Support on December 10, 2021.  ECF Nos. 10 and 11.  Plaintiffs filed a Response and Brief in Opposition to the Motion to Dismiss on January 18, 2022.  ECF Nos. 17 and 18.  The District filed a Reply in support of the Motion to Dismiss.  ECF No. 19.

The Motion to Dismiss is now ripe for consideration.

## III.    LEGAL STANDARD

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive

7

of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## IV. DISCUSSION

The District moves to dismiss the Amended Complaint in its entirety.  ECF No. 10.  The Court will address each claim separately, in the order addressed in the District's Brief in Support of the Motion to Dismiss.  ECF No. 11.

### A. Title IX Claim (Count III)

The District moves to dismiss Ms. Bedard's Title IX claim on the basis that Plaintiffs have failed to assert sufficient facts to reach the required threshold of pervasiveness to maintain such a claim.  Id. at 12-13.  Specifically, the District argues that the Amended Complaint contains allegations of only one incident which can be characterized as gender-based harassment.  It points to the incident in November 2017 when Ms. Bedard was called a "slut" and a "whore" on social media.  Id.  The District argues that there are no other allegations in the Amended Complaint that describe gender-based harassment.  Id.

In opposing the Motion to Dismiss, Plaintiffs argue that they have sufficiently pleaded a Title IX claim against the District.  ECF No. 18 at 2-7.  Plaintiffs argue that the District is attempting to minimize Ms. Bedard's educational deprivation by stating that she only experienced one isolated incident of gender-based discrimination.  In doing so, Plaintiffs argue, the District ignores multiple incidents of Ms. Bedard being called a "whore" or a "slut" in November 2017. Id. at 5-6.  Further, they argue that the District further ignores that the harassment and gender-based bullying continued via social media throughout the month of November 2017 and included students spreading rumors about her and using her photograph without her permission to harass her.  In addition, Plaintiffs note that the District fails to acknowledge Ms. Bedard's claim that a

8

Caucasian male student physically assaulted her by picking her up and slamming her to the ground in January 2018, which Ms. Bedard alleges was part of an ongoing pattern of sexual and gender-based harassment undertaken by male peers.  Id. at 6.  Finally, Plaintiffs argue that the District ignores Ms. Bedard's reports of ongoing harassment throughout 2018 and 2019, and that male peers that were pulling her hair were also committing acts of sexual harassment.  Id.  Thus, Plaintiffs assert that these ongoing acts that Ms. Bedard experienced were severe, pervasive and objectively offensive harassment as well as being consistent and unrelenting despite their complaints to District administrators.  Id.

In order to plead a Title IX violation under a hostile educational environment, the plaintiff must allege facts showing: "(1) a sexually hostile educational environment; (2) that [Plaintiffs] provided actual notice to 'an appropriate person' who had authority to take corrective measures; and (3) that the institution's response to the harassment amounted to deliberate indifference." Krebs v. New Kensington-Arnold Sch. Dist., No. CV 16-610, 2016 WL 6820402, at *3 (W.D. Pa. Nov. 17, 2016) (citing Price ex rel. O.P. v. Scranton Sch. Dist., No. 11-095, 2012 WL 37090, at *5 (M.D. Pa. Jan. 6, 2012)).  In addition, plaintiff's harassment "must both: (1) be viewed subjectively as harassment by the victim, and (2) be objectively severe or pervasive enough that a reasonable person would agree that it is harassment." Id. (citing Saxe v. St. Coll. Area Sch. Dist., 240 F.3d 200, 205 (3d Cir. 2001)).

Upon review, Plaintiffs have sufficiently alleged that Ms. Bedard experienced a sexually hostile educational environment.  First, contrary to the District's argument of a single incident of sexual harassment, Plaintiffs have alleged, in very specific detail, the sexually hostile (and racially hostile) environment that Ms. Bedard endured over an extended period of time.  Second, Plaintiffs provided repeated notice to the District and District leadership of the harassment.  Third, Plaintiffs

point to specific instances of the District failing to take prompt and immediate corrective action that may be construed as deliberate indifference. Plaintiffs also assert that this failure to act, fostered an ongoing hostile educational environment. Accordingly, the Motion to Dismiss the Title IX claim, Count III, is denied.

### B. Title VI Claim (Count VI)

Ms. Bedard also brings a claim under Title VI in Count VI. "Title VI prohibits intentional discrimination based on race in any program that receives federal funding." Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 521 (3d Cir. 2011). Thus, it enables a plaintiff to "sue a school for money damages for its failure to address a racially hostile environment." Id. (citation omitted). To state a claim under Title VI, Plaintiff must plead facts showing (1) "severe *or* pervasive harassment based on the student's race"; and (2) "deliberate indifference to known acts of harassment." L.L. v. Evesham Twp. Bd. of Educ., 710 F. App'x 545, 549 (3d Cir. 2017) (citing Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017); Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999) (internal citations omitted)).

In support of the Motion to Dismiss, the District only challenges the first element— whether Ms. Bedard was subject to conduct that was sufficiently "severe, pervasive, and objectively offensive" to plausibly state a Title VI claim. ECF No. 11 at 14-16. The District primarily relies on the decision of the Third Circuit in Whitfield, 412 F. App'x 517. There, the Third Circuit addressed what constituted severe and pervasive harassment actionable under Title VI. The plaintiff, an African-American female student, described several offensive incidents taking place at school. Id. at 519-520. In Whitfield, the plaintiff sued the school under Title VI and the District Court granted summary judgment in favor of the defendants because, in part, the harassment was not so severe, pervasive or objectively offensive that it deprived her of access to

educational opportunities.  Id.  On appeal, the Third Circuit affirmed this decision finding that the lower court "properly concluded that the combined actions and incidents experienced by [the plaintiff] did not rise to the level of severe and pervasive harassment."  Id. at 521 (internal quotation marks omitted).

Here, the District argues that Plaintiffs have not alleged severe, pervasive, and objectively offensive conduct that rises above "simple acts of teasing and name-calling among school children . . . even where these comments target differences in race."  ECF No. 11 at 14-16 (quoting Davis, 526 U.S. at 659).  As such, the District asserts that the conduct identified by Plaintiffs amounts to the same degree of harassment present in the Whitfield decision, if not less so.  The District argues that Ms. Bedard is alleged to have been physically assaulted on one occasion, less than the plaintiff in Whitfield who was spit on and slapped on one occasion and scratched on another occasion, resulting in her being sent to the emergency room.  Further, the District contends that the remainder of Ms. Bedard's allegations amount to the same type of racial name calling present in Whitfield or are allegations of conduct not necessarily motivated by race.  Based on this, they argue that Plaintiffs have failed to allege a hostile environment sufficiently pervasive to establish a claim under Title VI.

In opposing the Motion to Dismiss, Plaintiffs argue that they have sufficiently pleaded a violation of Title VI.  ECF No. 18 at 7-13.  Plaintiffs identify multiple incidents which, they argue, clearly amounted to severe, pervasive, and objectively offensive race-based harassment and discrimination.

> (1) In November 2017, Ms. Bedard became the target of derogatory, racist, and sexist remarks on social media such as "slut," "whore," and "nigger."

> (2) Fellow students continued to target Ms. Bedard by harassing her on social media, spreading rumors about her, and using photographs of her without her permission.

(3) On November 13, 2017, the same day that Mrs. Stosic reported her concerns as outlined above, Ms. Bedard received a vulgar text message from an unknown number that included the racist statement, "I hate niggers."

(4) On January 16, 2018, Ms. Bedard was physically assaulted by another Caucasian, male student.

(5) On January 23, 2018, Mrs. Stosic presented a PowerPoint presentation to Defendant's School Board to share her concerns about its failure to address systematic racial discrimination and to protect its students from harassment.

(6) Other students began bullying and blaming Ms. Bedard for the incident. More specifically, a Caucasian student sent text messages to her phone that said, "It's your fault, you know nothing is going to happen, fuck you for going to the authorities."

(7) Specifically, on January 31, 2018, Mr. and Mrs. Stosic emailed Defendant about hateful text messages Ms. Bedard received from peers and teachers asking Ms. Bedard when she was transferring to another school.

(8) On August 2, 2018, Mrs. Stosic attended a band meeting with other parents where the Band Director alluded to racial incidents from the previous year that appeared to be about Ms. Bedard.

(9) On August 3, 2018, Defendant emailed the following: "He [Mr. Mirabella] explained to us that he was trying to be proactive and let parents know that he was not going to tolerate any type of racial intimidation. He referenced a handful of incidents that we met with the HS staff about last year."

(10) In approximately September of 2018, someone keyed Ms. Bedard's vehicle while it was parked in Defendant's high school parking lot.

(11) In approximately November or December of 2018, Ms. Bedard tried out for the girls' basketball team. Every student who tried out made the team with the exception of Ms. Bedard.

(12) In February 2019, Ms. Bedard continued to be bullied and harassed by Caucasian peers on Defendant's property. Caucasian peers would make derogatory and racist comments to Ms. Bedard, and they would touch and pull Ms. Bedard's hair without permission.

(13) In February 2019, Ms. Bedard saw the words, "Fuck Niggers" carved into the lunch table in Defendant's high school.

(14) In April 2019, Ms. Bedard tried out for captain of the Majorette Team.  She was not chosen as captain. Instead, a Caucasian peer was selected.

(15) In May 2019, a female Caucasian peer began yelling at Ms. Bedard in the high school hallway.

(16) On September 26, 2019, Ms. Bedard was inexplicably not permitted to march with the Majorette Team. Upon information and belief, Ms. Bedard was the only student of color on the Majorette Team.

Id. at 11-12.

Plaintiffs also contend that Whitfield is distinguishable from the facts in this case. Plaintiffs refer the Court to cases involving harassing conduct and use of the "n-word" in which courts have allowed Title VI claims to proceed, which Plaintiffs contend are more comparable to the facts of this case.  Id. at 9-13.

Upon review, the Court finds that Plaintiffs sufficiently plead allegations demonstrating severe or pervasive conduct based on race.  As Plaintiffs point out, courts have held that even a single instance of the use of the "n-word" can create a racially hostile environment.  See Williams v. Lenape Bd. of Educ., No. 17-7482, 2020 WL 2111221, at *16 (D. N.J. May 4, 2020) ("the use of the n-word is so plainly egregious that a single utterance can be enough to establish a hostile environment"); see also L.L., 710 F. App'x at 549 (finding African-American student suffered hostile school environment under Title VI and the NJLAD where another student said the "n-word" in his presence).  In this case, Plaintiffs claim that the "n-word" was used toward Ms. Bedard in this case on many occasions, and that peers continued to use the word without repercussions after concerns were brought to the District's attention.  On top of this, Plaintiffs point to the numerous other instances of alleged harassment or discrimination detailed above. Considering all reasonable inferences in favor of Plaintiff, there are sufficient allegations to show that the alleged harassment was sufficiently severe or pervasive in order to withstand a motion

13

to dismiss.  Therefore, the Court denies the Motion to Dismiss relative to Ms. Bedard's Title VI claim in Count VI.

### C. Unconstitutional Policies and Customs Pursuant to 42 U.S.C. § 1983/<u>Monell</u> Claim (Count I)

The District also moves to dismiss Ms. Bedard's <u>Monell</u> claim in Count I, arguing that she fails to sufficiently plead any underlying constitutional deprivation to support her claim.  ECF No. 11 at 16-20.  The District argues that Plaintiffs do not plead facts demonstrating that Ms. Bedard was harassed to such degree that it interfered with her educational opportunities, or that any alleged deprivations were directly caused by the District's failure to respond to race or gender-based bullying.  <u>Id.</u> at 18-20.  The District also argues that Ms. Bedard does not have a protected property interest in participating in extracurricular activities.  <u>Id.</u> at 18-19.

In response, Plaintiffs assert that the District's "custom and practice" of ignoring incidents of discrimination and harassment, as well as its failure to properly train its employees, allowed Ms. Bedard's classmates to escalate their actions and behaviors without consequence.  ECF No. 18 at 14.  As a result, they argue, Ms. Bedard was violently assaulted and unable to receive the full benefit of a public education, arguing that she was unable to fully engage or focus on her schoolwork due to the bullying and she missed school activities and tests because of injuries from the assault.  <u>Id.</u> at 14-15.

Under <u>Monell</u>, a plaintiff may bring a claim under 42 U.S.C. § 1983 against a municipality if "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights."  <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 400 (1997) (citing <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694 (1978)).  But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."
Monell, 436 U.S. at 691.

For independent municipal liability to attach under § 1983, "there must still be a violation of the plaintiff's constitutional rights." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). Then, the plaintiff must show that the municipality itself caused the violation at issue. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). In other words, Plaintiffs must demonstrate that the violation of their rights was caused by a policy, custom or practice of the municipality. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

In Count I, Ms. Bedard brings a Monell claim arising out of allegations that the District's failure to adequately train its employees "interfered with her right to access educational opportunities, programs, services and supports provided to all students . . . ." ECF No. 9 ¶¶ 96-100. Plaintiffs claim that the District:

> [H]as encouraged, tolerated, ratified and been deliberately indifferent to the following patterns, practices and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:
>
> (a) Appropriate responses to reports of race-based harassment or bullying;
>
> (b) Appropriate responses to social-medial or technology-based harassment; and
>
> (c) Appropriate responses to reports of gender-based harassment or bullying.

Id. ¶ 99.

The problem with this claim, however, is that Plaintiffs do not identify what constitutional right has been violated. Plaintiffs vaguely refer to the District engaging in "unconstitutional policies and customs," but they do not specifically identify in their Complaint or Brief in Opposition to the Motion to Dismiss what constitutional right is at stake.

The Court is also unable to ascertain the specific nature of this claim based on Plaintiffs' allegations. Although Plaintiffs claim the District interfered with Ms. Bedard's "right to education," there is no fundamental right to a public education under the United States

Constitution.  <u>Fidler v. Stroudsburg Area Sch. Dist.</u>, 427 F. Supp. 3d 539, 555 (M.D. Pa. 2019)

(citing <u>Plyler v. Doe</u>, 457 U.S. 202 (1982) ("[p]ublic education is not a 'right' granted to

individuals by the Constitution"); <u>San Antonio Indep. Sch. Dist. v. Rodriguez</u>, 411 U.S. 1, 35-36

(1973) ("Education . . . is not among the rights afforded explicit protection under our Federal

Constitution.  Nor do we find any basis for saying it is implicitly so protected."); <u>Taylor v.

Metuchen Pub. Sch. Dist.</u>, No. 18-1842, 2019 WL 1418124, at *5 (D. N.J. Mar. 28, 2019) ("to the

extent that Plaintiff's substantive due process claim relies on the theory that H.T. was deprived of

a fundamental right to a public education, it fails as a matter of law.")).

Courts have recognized that students have a property interest in public education under

Pennsylvania state law, which is subject to the protections of procedural due process under the

Fourteenth Amendment.  <u>See id.</u> at 555-56.  However, Plaintiffs do not specifically plead that

Defendants failed to provide due process of law in Count I, nor do they appear to raise this

argument in their Brief in Opposition to the Motion to Dismiss.  Without knowing which

constitutional right was allegedly violated, the Court cannot analyze this claim.  For these reasons,

the Court will grant the Motion to Dismiss relative to Count I for failure to state a claim, however,

Plaintiffs will be granted leave to amend their Complaint as appropriate.

### D.  PHRA Claim (Count II)

In Count II, Ms. Bedard brings a race discrimination claim pursuant to the PHRA.  Noting

that claims under the PHRA are generally interpreted identically to claims brought under Title VI

and Title IX, the District requests that Ms. Bedard's PHRA claim be dismissed for the same reasons

as her Title VI and Title IX claims.  ECF No. 11 at 20.  The District also argues that Plaintiffs do

not sufficiently plead that Ms. Bedard was denied access to the District's educational

accommodations.  <u>Id.</u> at 21.

"Claims under the PHRA are 'treated the same as Title VI . . . claims' and the 'resolution of [those claims]' will be dispositive of' PHRA claims based on the same facts." Astaree v. Villanova Univ., 509 F. Supp. 3d 265, 273 (E.D. Pa. 2020) (quoting Davis v. Quaker Valley Sch. Dist., No. 13-1329, 2016 WL 912297, at * 1 n. 2 (W.D. Pa. Mar. 10, 2016)). Because Ms. Bedard has adequately stated a claim under Title VI, her claim under the PHRA should also proceed at this preliminary stage. Therefore, the Court denies the Motion to Dismiss relative to Ms. Bedard's PHRA claim in Count II.

### E.  Fourteenth Amendment "State Created Danger" Claim (Count IV)

In Count IV, Ms. Bedard brings a claim for violation of the Due Process Clause of the Fourteenth Amendment.  Generally, a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Morrow v. Balaski, 719 F.3d 160, 166 (2013) (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)).  As the United States Supreme Court has held, while the Due Process Clause "forbids the State *itself* from depriving 'individuals of life, liberty or property without 'due process of law,'" this "language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." DeShaney, 489 U.S. at 195.

The state-created danger doctrine is a "narrow exception to the general rule that the state has no duty to protect its citizens from private harms." Henry v. City of Erie, 728 F.3d 275, 286 (3d Cir. 2013).  Under this doctrine, "a state actor may be held liable under the 'state-created danger' doctrine for creating a danger to an individual in certain circumstances." Id. (citing Morrow, 719 F.3d at 176).  Liability may attach "where the state acts to *create* or *enhance* a danger

that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."

Morrow, 719 F.3d at 177 (citing Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996)).

> To prevail on a state-created danger theory, Plaintiffs must prove four elements:
>
> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen more vulnerable to danger than had the state not acted at all.

Id. (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

In support of the Motion to Dismiss, the District argues that Plaintiffs do not satisfy the fourth element of a state-created danger claim. The District argues that Plaintiffs' claim is premised on the District's *failure* to act, rather than any affirmative conduct on its part. As a result, the District argues that Plaintiffs do not plead facts showing it affirmatively used its authority in a manner that would satisfy the fourth element of a state-created danger claim. ECF No. 11 at 21-23.

In response, Plaintiffs argue that Ms. Bedard's claim is premised on the following affirmative acts, which satisfy the fourth element of her claim: (1) providing inappropriate supervision over minors, which led to Ms. Bedard being assaulted; (2) blaming Ms. Bedard for engaging in "horseplay," rather than investigating and disciplining the offending student; (3) disciplining students by giving warnings instead of implementing more appropriate measures to address the behavior; (4) allowing District staff to hold basketball try-outs in which Ms. Bedard, the only biracial student, was not chosen for the team; (5) excusing an offending student's physically and sexually inappropriate behavior as the result of his disability, instead of protecting

18

Ms. Bedard; and (6) preventing Ms. Bedard from having a "safe and appropriate education." ECF

No. 18 at 19.

Upon review, the Court agrees that Plaintiffs do not plead sufficient facts to satisfy the

fourth element of a state-created danger claim.  As this Court has recognized, "[t]he Third Circuit

has repeatedly rejected state-created danger claims involving peer harassment or violence, even

when school officials allegedly knew of the dangerous conditions ultimately resulting in injury to

the plaintiffs, when those officials did not affirmatively act to create the danger."  MDB v.

Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 589 (W.D. Pa. 2019) (citing Morrow, 719 F.3d

at 179; Brown v. Sch. Dist. of Phila., 456 F. App'x 88, 90 n. 5 (3d Cir. 2011) (holding that school's

failure to expel or punish a violent student is not an affirmative act); D.R. by L.R. v. Middle Bucks

Area Vo. Tech. Sch., 972 F.2d 1364, 1370 (3d Cir. 1992) (holding that school's failure to

adequately remediate known physical and sexual misconduct by students is not an affirmative

act)).

In Morrow, for example, the Third Circuit found that a school district's failure to expel the

plaintiff-student's bully was not affirmative conduct triggering a duty to protect from danger.

While plaintiffs argued that the school district's conduct created a dangerous situation for the

plaintiff-student, the Third Circuit noted that "[u]nder [such] reasoning . . . every decision by

school officials to use or *decline to use* their authority, disciplinary or otherwise, would constitute

affirmative conduct that may trigger a duty to protect."  Morrow, 719 F.3d at 178.  As the Third

Circuit explained, "merely restating the [school's] inaction as an affirmative failure to act does not

alter the passive nature of the alleged conduct."  Id. at 179.  As such, "[a]ny and all failures to act"

cannot "be transformed into an affirmative exercise of authority."  Id. at 178.

In this case, Plaintiffs have not identified any action by the District that caused Ms. Bedard to be more vulnerable than she would have been had the District not acted at all. Rather, the gist of Plaintiff's Complaint is that it was the District's inaction, *i.e.*, failure to adequately train, supervise or discipline, that placed Ms. Bedard at an increased risk of harm. Therefore, the Motion to Dismiss is granted relative to Plaintiffs' Fourteenth Amendment claim in Count IV.

### F.  Section 1983 Claim (Count V)

In Count V, Plaintiffs Mr. and Mrs. Stosic claim that the District violated their liberty interests in (1) the parenthood and companionship of their child; and (2) the maintenance and integrity of their family as a result of the District failing to adequately respond to reports of race and gender-based harassment. ECF No. 11 at 23.

In support of the Motion to Dismiss, the District argues that its alleged failure to adequately respond to reports of gender and race-based harassment is too attenuated to constitute a deliberate decision to deprive Mr. and Mrs. Stosic of their liberty interest in the parenthood and companionship of their child and in the maintenance and integrity of their family under the Fourteenth Amendment. Id. at 24.

In response, Plaintiffs argue that they have sufficiently pleaded allegations demonstrating that the District deliberatedly violated Mr. and Mrs. Stosic's fundamental rights as parents. Plaintiffs argue that the District did so by dismissing known incidents of gender and race-based harassment, discrimination and bullying; failing to report and investigate assaults, racial discrimination and sexual harassment; providing inappropriate supervision over minors in its care, blaming Ms. Bedard for engaging in "horseplay" when she was assaulted, instead of investigating and disciplining the offending student; disciplining offending students by giving warnings instead of implementing measures to address the systematic and ongoing bullying; permitting the

District's staff to hold basketball try-outs resulting in Ms. Bedard being the only student not selected for the team; excusing an offending student's physically and sexually inappropriate behavior as the result of that student's disability; and preventing Ms. Bedard from having a safe and appropriate education.  ECF No. 18 at 20-22.

The Fourteenth Amendment protects the fundamental liberty interest that parents have in making decisions regarding the custody, care, and management of their children.  Parents United for Better Schools, Inc. v. Sch. Dist. of Phila. Bd. of Educ., 148 F.3d 260, 274–75 (3d Cir. 1998); see also Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997) (citing Lehr v. Robertson, 463 U.S. 248, 258 (1983); Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987) overruled on other grounds by Burns v. Reed, 500 U.S. 478 (1991)).

This liberty interest, however, is not absolute.  Anspach ex rel. Anspach v. City of Phila., 503 F.3d 256, 261 (3d Cir. 2007).  Conflict with a parent's liberty interest will not lightly be found and only occurs when there is some "manipulative, coercive, or restraining conduct by the State."  Id. at 266.  In this regard, a parent's liberty interest will be implicated only if the state's action "deprived them of their right to make decisions concerning their child," and not when the action merely "complicated the making and implementation of those decisions."  C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 184 (3d Cir. 2005); see also J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 933–34 (3d Cir. 2011); Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 588 (M.D. Pa. 2014), aff'd, 644 F. App'x 172 (3d Cir. 2016).  Moreover, to sufficiently state a due process claim for interference with the parent-child relationship, a plaintiff must allege that the defendant deliberately sought to harm that relationship.  Clark v.

Conahan, 737 F. Supp. 2d 239, 263 (M.D. Pa. 2010) (citing Chambers ex rel. Chambers v. School

Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 192 (3d Cir. 2009)).

  In D.C. v. Pittsburgh Public Schools, 415 F. Supp. 3d 636 (W.D. Pa. 2019), for example,

a parent plaintiff filed a Fourteenth Amendment liberty interest violation claim as a result of the

school district's alleged failure to provide behavioral support services specific to the needs of her

child with disabilities and improperly relied on inappropriate discipline and school police in

response to her child's behavioral issues arising out of the child's disability.  In finding that this

claim should be dismissed, the district court explained:

> Second, [parent plaintiff], who has a cognizable liberty interest in the care, custody,
> and control of her son, D.C., alleges that the District's failure to adequately support
> D.C. caused D.C's victimization by school police and staff, which in turn caused
> the loss and diminution of her liberty interest.  This chain of events, which starts
> with a failure to act, is too attenuated to be the deliberate decision to deprive or
> interfere that is required to state a claim under the Fourteenth Amendment's Due
> Process Clause.

Id. at 668.

  Upon review, the Court finds that Mr. and Mrs. Stosic fail to state a claim upon which

relief can be granted.  Plaintiffs do not allege any conduct that amounts to manipulative, coercive

or restraining conduct by the District.  Instead, Plaintiffs' allegations arise out of the District's

alleged "fail[ure] to adequately respond to the reports of race and gender-based harassment

reported by Ms. Bedard and her parents," which "result[ed] in her being further victimized by her

peers."  ECF No. 9 ¶ 14.  As in D.C., this chain of events that starts with an alleged failure to act

in the face of others' misconduct is too attenuated to amount to the type of deliberate decision to

deprive or interfere that is required to state a claim under the Fourteenth Amendment's Due

Process Clause.  Accordingly, the Court grants the Motion to Dismiss as to Mr. and Mrs. Stosic's

Fourteenth Amendment claim under 42 U.S.C. § 1983 in Count V.

## V.   CONCLUSION

For these reasons, the Motion to Dismiss, ECF No. 10, is granted in part and denied in part. The Court grants the Motion to Dismiss as to Ms. Bedard's claim for Unconstitutional Policies and Customs Pursuant to 42 U.S.C. § 1983 (Monell) in Count I, Ms. Bedard's claim for Violation of the Fourteenth Amendment State Created Danger in Count IV, and Mr. and Mrs. Stosic's claim for Violation of 42 U.S.C. § 1983 in Count V.

"If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236. Based on the information currently available to the Court, it cannot conclude with certainty whether future amendment of Ms. Bedard's Monell claim would be futile. As stated in the Order accompanying this Memorandum Opinion, Plaintiffs shall have 14 days to file a Second Amended Complaint if they choose to do so relative to Count I.

An appropriate Order will be entered.

Dated: July 11, 2022

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF.